IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAGNESIUM MACHINE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-21-1115-PRW |
| | ) |
| TERVES LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant Terves LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 15).[1] For the reasons that follow, the Motion (Dkt. 15) is **GRANTED**, and the case is **DISMISSED**.

*Background*

This case revolves around a dispute over two patents held by the Defendant, Terves LLC. Terves is a developer and manufacturer of metal materials for the oil and gas industry, and it holds what the parties refer to as the 653 Patent and 740 Patent. Plaintiff Magnesium Machine, LLC, is a developer of similar products for the oil and gas industry. Magnesium and its business partners have engaged in a lengthy legal battle with Terves—involving at least four independent legal proceedings—over the 653 Patent and 740 Patent. Terves claims that Magnesium has and continues to infringe on its 653 Patent and 740 Patent.

---

[1] Terves' Motion alternatively asks the Court to transfer, stay, or dismiss this case based on the first-to-file rule. Because the Court decides the Motion on personal jurisdiction grounds, the Court declines to reach Terves' alternative argument.

1

While the parties have a somewhat complicated history, the facts at issue here are relatively straightforward. On November 1, 2021, Terves sent three identical notice letters to three of Magnesium's customers—none of which were sent to Oklahoma.[2] One letter was sent to Bear Claw Technologies in Ogden, Utah, while the second letter was sent to Jet Oilfield Services in Dallas, Texas. The third letter was sent to Frontier Oil Tools in Houston, Texas. The letters informed all three customers that Terves had learned from publicly available court records that the companies bought products from Magnesium that (allegedly) infringed on Terves' patents. Because of this, Terves demanded all three companies immediately cease and desist selling the products bought from Magnesium.

None of the customers responded to the letters. Instead, the customers forwarded the letters to an attorney in the Oklahoma City office of the law firm Hall Estill.[3] On November 12, 2021, Daniel Carsey, an attorney with Hall Estill and counsel of record for Magnesium in this case, sent a letter to Terves' Ohio-based attorney.[4] This letter purported to respond to Terves' November 1 notice letters on behalf of both the customers who received the letters and Magnesium. Carsey's letter disputed Terves' claims of

---

[2] *See* Ex. 3 (Dkt. 1), at 1 (providing the letter sent to Frontier Oil Tools); Ex. 1 (Dkt. 15), at 5–6 (providing the letters sent to Bear Claw Technologies and Jet Oilfield Services).

[3] The letter Plaintiff provides in its Complaint only refers to the Frontier Oil letter being forwarded to Hall Estill. *See* Ex. 4 (Dkt. 1), at 1. But the parties' briefs seem to suggest that all three letters were forwarded to Hall Estill in Oklahoma City.

[4] *See* Ex. 4 (Dkt. 1), at 1–2.

infringement and directed Terves to send "all future correspondence on this matter to [Carsey]."[5]

Twelve days later, Magnesium filed this lawsuit.[6] The Complaint asserts four claims against Magnesium related to the patent dispute at issue in the November 1 notice letters sent to Magnesium's customers. Counts one and two ask for a declaration of noninfringement and/or invalidity of the 653 Patent and 740 Patent—the patents Terves asserted in its November 1 letters. Count three is a claim for tortious interference with contract and prospective economic advantage. This claim also relates to the notice letters (and other speculative communications) Terves sent to Magnesium's customers. The final claim alleges unfair competition under 15 U.S.C. § 1125.

Terves timely filed a motion to dismiss, claiming that this Court does not have personal jurisdiction over Terves on the claims at issue in this case.[7] There is no claim that Terves is subject to general personal jurisdiction in Oklahoma.[8] Rather, Magnesium asserts that Terves is subject to specific personal jurisdiction because its activities create minimum sufficient contacts with Oklahoma. And exercising jurisdiction over Terves, according to Magnesium, would not be unreasonable or violate principles of fair play or substantial

---

[5] *Id.* at 1.

[6] On November 22, the day before Magnesium's Complaint was filed, Terves responded to the November 12 letter from Carsey with a single, two-page letter. *See* Def.'s Reply (Dkt. 21), at 4.

[7] Terves claims that none of the activities identified by Magnesium create sufficient minimum contacts to subject Terves to specific personal jurisdiction in this case.

[8] Terves is alleged to be a resident of Ohio and Nevada. *See* Compl. (Dkt. 1), at 1.

justice. But even if it has not yet established personal jurisdiction over Terves, Magnesium asks to conduct jurisdictional discovery "to inquire into what other contacts, if any, Terves has directed to Oklahoma."[9]

### *Legal Standard*

A federal district court in patent-related litigation must have personal jurisdiction over the defendant as it would in any other type of case.[10] The parties agree that Federal Circuit precedent governs the personal jurisdiction analysis in this case.[11] "Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: [1] whether a forum state's long-arm statute permits service of process, and [2] whether the assertion of personal jurisdiction would violate due process."[12] Oklahoma's long-arm statute permits service of process as broad as the permissible limits of due process.[13] Therefore, the "jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process."[14]

---

[9] Pl.'s Resp. (Dkt. 18), at 7.

[10] *See, e.g.*, *Genetic Veterinary Sciences, Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1307–12 (Fed. Cir. 2019).

[11] *See* Def.'s Mot. (Dkt. 15), at 5; Pl.'s Resp. (Dkt. 18), at 3; *see also Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). However, as explained below, Magnesium's request for jurisdictional discovery is governed by Tenth Circuit precedent. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010).

[12] *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1359 (Fed. Cir. 2001).

[13] *See Glidewell Motors, Inc. v. Pate*, 577 P.2d 1290, 1291 (Okla. 1978).

[14] *Avocent*, 552 F.3d at 1329.

Magnesium does not argue that Terves is subject to general personal jurisdiction in Oklahoma. Instead, it argues that Terves is subject to specific jurisdiction. "In contrast to general, all-purpose jurisdiction,"[15] specific or "case-linked" jurisdiction "exists where a claim arises out of the non-resident defendant's contacts with the forum."[16]

The Federal Circuit has outlined what is functionally a two-step test for determining whether the exercise of specific personal jurisdiction is appropriate in a given case.[17] The first step asks whether the defendant has sufficient "minimum contacts" with the forum.[18] This step ensures that "an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state."[19] In determining whether a defendant has sufficient minimum contacts, courts are to "consider" two elements: (1) "whether the defendant 'purposefully directed' its activities at residents of the forum; and (2) whether the claim 'arise[s] out of or relate[s] to' the defendant's

---

[15] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citation & quotation marks omitted).

[16] *Upshaw v. Progressive Ins. Co.*, 292 F. Supp. 3d 205, 210 (D.D.C. 2017).

[17] *See Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1375 (Fed. Cir. 2022). While the parties refer to the relevant test as a three-step framework, the test is functionally only two steps because the first two elements seek to answer the same question: whether "the 'minimum contacts' portion of the jurisdictional framework" has been met. *Id.*; *see also Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1138 (Fed. Cir. 2018) (*"*The minimum contacts inquiry involves two related requirements. First, the defendant must have purposefully directed its conduct at the forum state.  Second, the claim must arise out of or relate to the defendant's contacts with the forum." (cleaned up)).

[18] *Maxchief*, 909 F.3d at 1138.

[19] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008).

activities within the forum."[20] Under this first step, the plaintiff bears the burden to demonstrate sufficient minimum contacts.[21] "Where minimum contacts are satisfied, the exercise of jurisdiction is 'presumptively reasonable.'"[22]

If the plaintiff meets its burden at step one, the court moves to the second step and asks, "whether assertion of personal jurisdiction is reasonable and fair."[23] At this step, "the burden is placed on the defendant to present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[24]

---

[20] *Zipit Wireless*, 30 F.4th at 1375 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)); *see id.* (explaining that these "two factors comprise the 'minimum contacts' portion of the jurisdictional framework" (internal citation & quotation marks omitted)).

[21] A burden that is albeit more limited at this stage. *See Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1220 (10th Cir. 2021).

[22] *Zipit Wireless*, 30 F.4th at 1375 (quoting *Xilinx, Inc. v. Papst Licensing GmbH & Co.*, 848 F.3d 1346, 1356 (Fed. Cir. 2017)).

[23] *Id.*

[24] *Id.* (quoting *Burger King*, 471 U.S. at 477). The parties devote a significant portion of their briefing to the jurisdictional relevance of the infringement notice letters in light of a line of cases from the Federal Circuit typically identified with *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998). Although the *Red Wing* line of cases has been subject to some confusion over time, the Federal Circuit recently clarified its scope. First, infringement notice letters *can* be a contact satisfying the minimum contacts step of the inquiry if the letters are purposefully directed at the forum and the claims arise out of or relate to the letters. *See Maxchief*, 909 F.3d at 1140–41; *Zipit Wireless*, 30 F.4th at 1375–76. There is no "bright-line rule that cease-and-desist letters cannot support minimum contacts for personal jurisdiction." *Zipit Wireless*, 30 F.4th at 1376 (cleaned up); *see also Trimble Inc., v. PerDiemCo LLC*, 997 F.3d 1147, 1156 (Fed. Cir. 2021). Second, to the extent *Red Wing* remains good law, *Trimble*, 997 F.3d at 1156, it is just one of the factors that "must be considered [at step two] together with the other *Burger King* factors" to determine whether exercising jurisdiction is reasonable and complies with principles of fair play and substantial justice. *Zipit Wireless*, 30 F.4th at 1378; *see also id.* at 1377–81.

*Discussion*

The Court first addresses whether the exercise of specific personal jurisdiction is appropriate in this case and then turns to Magnesium's request to conduct jurisdictional discovery.

I.     *Personal Jurisdiction*

To establish personal jurisdiction over Terves, Magnesium bears the burden of demonstrating Terves' sufficient minimum contacts with Oklahoma. As explained above, the minimum contacts inquiry has two components. The first component asks whether Terves "'purposefully directed' its activities at residents of" Oklahoma.[25] The second component asks whether the claims in this case "arise out of *or* relate to"[26] activities Terves purposely directed to Oklahoma.[27] None of the purported contacts Magnesium relies on establish "sufficient minimum contacts" to support the exercise of personal jurisdiction over Terves in this forum.[28]

---

[25] *Maxchief*, 909 F.3d at 1138.

[26] *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) (cleaned up) (emphasis added).

[27] *Maxchief*, 909 F.3d at 1138; *see also Hood*, 21 F.4th at 1222 ("The test for satisfying the second requirement is whether the plaintiff's claims 'arise out of or relate to ... activities' that the defendant purposefully directed at residents of the forum."). This step does not require "a strict causal relationship between the defendant's in-state activity and the litigation[.]" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). While the "arise out of" component sweeps in activities that directly cause the suit, the "relate to" component is broader and "contemplates that some relationships will support jurisdiction without a causal showing." *Id*. But the "relate to" component "does not mean that anything goes." *Id*. "[T]he phrase 'relate to' incorporates real limits[.]" *Id*.

[28] *Burger King*, 471 U.S. at 478.

*A. Notice Letters*

Magnesium's first attempt to identify sufficient minimum contacts—and the activity that dominates its Complaint—focuses on the notice letters sent to Magnesium's three customers on November 1, 2021. But these letters, and the communications that followed from them, do not create minimum contacts with Oklahoma. To start, Magnesium admits that none of these letters were sent to Oklahoma. Nor were the letters sent to Magnesium's counsel or one of its subsidiaries in some other state.[29] Instead, the letters were sent to three independent entities in Texas and Utah. So, these letters were not contacts with Oklahoma because they were communications "purposefully directed" at different forums[30]—Texas and Utah.

Seemingly recognizing this point, Magnesium puts forward another theory to justify these communications constituting sufficient minimum contacts with Oklahoma. It points out that Magnesium's counsel (located in Oklahoma) responded to Terves' letters from Oklahoma—after the customers forwarded the letters from Texas and Utah—and that Terves then responded to Magnesium's Oklahoma-based counsel.

But those acts also do not create minimum sufficient contacts with Oklahoma. Recall that to create minimum sufficient contacts, Terves *itself* must have "purposefully

---

[29] *See Trimble*, 997 F.3d at 1152 n.2, 1156 (finding that communications sent to a company's counsel in Colorado and subsidiary in Iowa were really a contact directed at California, where the company resided).

[30] *Burger King*, 471 U.S. at 472–73.

directed" contacts to Oklahoma.[31] That means that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."[32] But here, Terves' letters only made it to Oklahoma through the unilateral activity of Magnesium's customers. As explained above, Terves itself purposefully directed the letters to Texas and Utah. The unilateral activities of others—the Utah and Texas customers forwarding the letters to Magnesium's counsel in Oklahoma—do not change that fact. That Terves responded to Magnesium's Oklahoma-based counsel after the letters were unilaterally sent to Oklahoma also does not change this conclusion. Under current Federal Circuit precedent, a letter sent to a lawyer in Oklahoma regarding clients in Texas and Utah is a contact with and purposefully directed to Texas and Utah, not Oklahoma.[33]

---

[31] *Avocent*, 552 F.3d at 1334 (internal citations omitted) (emphasis in original); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State[.]").

[32] *Hanson*, 357 U.S. at 253.

[33] *See, e.g.*, *Inamed*, 249 F.3d at 1360 (A letter sent to an attorney in New York regarding a client in California is a contact with California, not New York.); *cf. Maxchief*, 909 F.3d at 1139, 1141 (A letter sent to an attorney in Tennessee regarding a client in Kansas is a contact with Kansas, not Tennessee.). In some respects, this case is even more attenuated because the defendants in *Inamed* and *Maxchief* independently made the choice to make first contact with the lawyers in New York and Tennessee. But here, Terves merely responded to lawyers in Oklahoma after the unilateral activities of others. It did not seek out the Oklahoma lawyers for contact. *Cf. Walden v. Fiore*, 571 U.S. 277, 291 (2014) (A plaintiff's attorney in Nevada contacting a defendant in Georgia is not a jurisdictionally significant contact with Nevada because it "is precisely the sort of unilateral activity of a third party that cannot satisfy the requirement of a contact with the forum State." (internal quotation marks omitted)).

Magnesium attempts to avoid this conclusion by arguing that "even without a single direct contact with Oklahoma, this Court nonetheless still has specific personal jurisdiction over Terves" because its "intentional conduct" directed at Texas and Utah was "calculated to cause injury" to Magnesium in Oklahoma.[34] Relying on the Supreme Court's decision in *Calder v. Jones*,[35] Magnesium maintains that because Terves' conduct in Texas and Utah was calculated to cause injury to Magnesium in Oklahoma, "Terves must have reasonably anticipated being haled into court in Oklahoma."[36]

But *Calder* did not create a sweeping rule that a defendant is subject to personal jurisdiction anywhere its actions may have some sort of perceivable effect, regardless of how attenuated that effect may be. "[I]t is not enough" that out of forum conduct "might have 'effects'" in the forum state[37] or that a forum resident may "suffer[] foreseeable harm" in the forum state.[38] Rather, the *Calder* line of cases only confers jurisdiction "when the defendant's conduct *both* has an effect in the forum state *and* was directed at the forum state *by the defendant*."[39] Here, even if Terves' letters had an effect in Oklahoma, they were not directed at Oklahoma by Terves. As explained above, Terves' letters were

---

[34] Pl.'s Resp. (Dkt 18), at 7–8 (discussing *Calder v. Jones*, 465 U.S. 783 (1984)).

[35] 465 U.S. 783 (1984).

[36] Pl.'s Resp. (Dkt 18), at 7 (cleaned up).

[37] *Maxchief*, 909 F.3d at 1138 (discussing *Calder*).

[38] *Walden*, 571 U.S. at 289; *see also id*. at 290 ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum.").

[39] *Maxchief*, 909 F.3d at 1138 (quoting 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1069.1 (4th ed. 2018)) (emphasis added); *accord Lacebark, Inc. v. Sakata Seed Am., Inc*, 2013 WL 12086778, at *3 (W.D. Okla. Jan. 16, 2013); *Shrader v. Biddinger*, 633 F.3d 1235, 1239–41 (10th Cir. 2011).

purposefully directed to Texas and Utah, not Oklahoma. And as a result, there is no basis for personal jurisdiction under *Calder*.[40]

### B. Sale of Terves' products and services in Oklahoma

Magnesium also relies on the sale of Terves' products and services in Oklahoma, alleging that some percentage of Terves' total sales since 2019 have been into Oklahoma, "where Terves admits it maintains multiple customers."[41] But precedent forecloses this argument.[42] The plaintiff in *Maxchief Investments v. Wok & Pon Industries*[43] made this very same argument, pointing to the defendant's shipments and sales of the patented products in the forum state to establish minimum contacts.[44] The Federal Circuit rejected that argument, explaining that "[s]hipments and sales of patented products by the patent

---

[40] *Cf. Maxchief*, 909 F.3d at 1138–39 (finding *Calder* jurisdiction inapplicable); *Walden*, 571 U.S. at 289–91 (same).

[41] Pl.'s Resp. (Dkt. 18), at 6. Terves represents that only 1–2% of its total sales since the patents at issue first issued in 2019 have been in Oklahoma. *See* Def.'s Mot. (Dkt. 15), at 7. Magnesium makes no attempt to dispute this representation.

[42] It is worth noting that this line of cases, in some respects, appears to be in some tension with the Supreme Court's most recent decision discussing the contours of the "arise out of or related to" language of the specific personal jurisdiction analysis in *Ford Motor Company*. Even prior to *Ford Motor Company*, the Federal Circuit itself recognized that its precedent in this area was in part based on the Supreme Court having (up until *Ford Motor Company*) "declined to address the exact contours of the 'arise out of or related to' language of the specific jurisdiction analysis." *Avocent*, 552 F.3d at 1336. But in some respects, the Federal Circuit's doctrine in this area may be more consistent with *Ford Motor Company* than some of its sister circuits. *Compare Avocent* 552 F.3d at 1337 (discussing how the Federal Circuit's "own interpretation of the 'arise out of or related to' language is far more permissive than either the 'proximate cause' or the 'but for' analyses" adopted by several other circuits), *with Ford Motor Co.*, 141 S. Ct. at 1026 (rejecting the "proximate cause" or "but for" causation line of cases).

[43] 909 F.3d 1134 (Fed. Cir. 2018).

[44] *Id.* at 1138 n.2.

11

holder are not enforcement activities, and thus do not qualify as relevant minimum contacts."[45] Nor does *Maxchief* stand alone. The Federal Circuit has held many times that "mere evidence of sales within the forum of products covered by the relevant patent(s) is insufficient to guarantee specific personal jurisdiction over the patentee."[46] That is because "a defendant patentee's mere acts of making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, *relate* in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability."[47] Nor has Magnesium provided any argument (and the Court sees none) as to how these acts could in any way "relate to" its tortious interference and unfair competition claims.[48] Thus, "such sales do not constitute such 'other activities' as will support a claim of specific personal jurisdiction over a defendant patentee."[49]

---

[45] *Id.* (cleaned up). Magnesium does not claim the type of pervasive commercial activity justifying specific personal jurisdiction at issue in *Ford Motor Company* exists here. *See Ford Motor Co.*, 141 S. Ct. at 1026–30. Nor does it claim that these activities subject Terves to general jurisdiction. *See Avocent*, 552 F.3d at 1336 ("While such activities may in the aggregate justify the exercise of *general* jurisdiction over the patentee, they do not establish a basis for *specific* jurisdiction in this context.").

[46] *Avocent*, 552 F.3d at 1336.

[47] *Id*. (emphasis added).

[48] *Bristol-Myers*, 137 S. Ct. at 1780 (cleaned up).

[49] *Id*. Magnesium also briefly alludes to activities taken by Terves in prior legal proceedings. Specifically, Magnesium focuses on subpoenas Terves served on Magnesium in Oklahoma in 2019 for the purpose of gathering evidence for a lawsuit against a third-party in Ohio. Those activities certainly subjected Terves to specific personal jurisdiction in this Court when Magnesium filed a motion to quash those subpoenas. *See Magnesium Machine, LLC v. Terves LLC*, No. 19-mc-00009-PRW (W.D. Okla.). But other than a single conclusory statement, Pl.'s Resp. (Dkt. 18), at 6, Magnesium—despite bearing the

## II.    *Jurisdictional Discovery*

Having concluded that Magnesium has failed to establish that Terves has sufficient minimum contacts with Oklahoma, the Court must address Magnesium's passing request to conduct limited jurisdictional discovery "to inquire into what other contacts, if any, Terves has directed to Oklahoma."[50] Because jurisdictional discovery is "an issue not unique to patent law," it is controlled by the law of the regional circuit—here, the Tenth Circuit.[51] Generally, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion."[52] However, "as with the [] handling of discovery in other stages of litigation, in the context of a motion to dismiss for lack of jurisdiction," district courts have "much room to shape discovery."[53] Accordingly, the decision of "whether to grant jurisdictional discovery is a matter of discretion for the district court."[54]

---

burden to demonstrate a connection—has made no attempt to explain how this suit "arises out of or relates to" those contacts. *Bristol-Myers*, 137 S. Ct. at 1780 (cleaned up).

[50] Pl.'s Resp. (Dkt. 18), at 7.

[51] *Autogenomics Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021–22 (Fed. Cir. 2009).

[52] *Budde v. Ling–Temco–Vought, Inc.,* 511 F.2d 1033, 1035 (10th Cir. 1975).

[53] *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 102 (10th Cir. 2012) (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort,* 629 F.3d 1173, 1188–89 (10th Cir. 2010)) (cleaned up); *see Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1233 (10th Cir. 2020) ("District courts are endowed with broad discretion over discovery, including whether to grant discovery requests with respect to jurisdictional issues.").

[54] *Cent. Wyoming Neurosurgery, LLC v. Barta-Iso Aviation*, 2013 WL 2457705, at *4 (D. Wyo. June 6, 2013) (citing *Budde*, 511 F.2d at 1035).

"[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant. Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is *necessary*.'"[55] "The district court does not abuse its discretion by denying jurisdictional discovery where there is a 'very low probability that the lack of discovery affected the outcome of this case.'"[56] "[T]he burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—[is] on the party seeking the discovery[.]"[57]

Here, Magnesium has not met its burden to demonstrate that jurisdictional discovery is appropriate because it "has failed to specify what it hopes to uncover in discovery."[58] The Tenth Circuit has made clear that "a district court does not abuse its discretion when it denies a general, unsupported motion for jurisdictional discovery."[59] That is because "pure speculation as to the existence of helpful facts is insufficient, as a matter of law, to constitute the type of prejudice" required to justify jurisdictional discovery.[60] Magnesium's

---

[55] *Grynberg*, 490 F. App'x at 103 (quoting *Sizova v. Nat'l Inst. of Standards & Tech.,* 282 F.3d 1320, 1326 (10th Cir. 2002)).

[56] *Id.* (quoting *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004)).

[57] *Breakthrough*, 629 F.3d at 1189 n.11; *accord Cent. Wyoming Neurosurgery*, 2013 WL 2457705, at *4 ("The party seeking jurisdictional discovery bears the burden of demonstrating (1) a legal entitlement to it and (2) how the party would be harmed by a denial of jurisdictional discovery.").

[58] *Cent. Wyoming Neurosurgery*, 2013 WL 2457705, at *4.

[59] *Id.* (quoting *World Wide Ass'n of Specialty Programs & Sch. v. Houlahan,* 138 F. App'x 50, 52 (10th Cir. 2005)).

[60] *Dental Dynamics*, 946 F.3d at 1234.

brief exhibits such a request, and as a result, fails to show that denial of discovery would result in prejudice. Magnesium merely asserts that "there's no telling how many contacts Terves has with Oklahoma that are unknown at this time," that it would "not be surprising" if Terves had other contacts, and that these uncertainties justify discovery of undefined scope "to inquire into what other contacts, if any, Terves has directed to Oklahoma."[61] Such speculative statements seeking to justify open-ended and undefined jurisdictional discovery are insufficient to carry Magnesium's "burden of demonstrating a legal entitlement to jurisdictional discovery[.]"[62] Therefore, Magnesium's request for jurisdictional discovery is denied.

---

[61] Pl.'s Resp. (Dkt. 18), at 6–7.

[62] *Breakthrough*, 629 F.3d at 1189 n.11; *see, e.g.*, *Grynberg,* 490 F. App'x at 104 (affirming the district court's denial of jurisdictional discovery, in part, because "[t]he plaintiffs do not tell us what specific documents they would have sought in discovery"); *Dental Dynamics*, 946 F.3d at 1233–34 (same); *Prince v. Intercept*, 2021 WL 7209554, at *8 (D. Wyo. Jan. 15, 2021) (denying a request for jurisdictional discovery based on "pure speculation" that it was "plausible" to assume from other contacts that the defendants had more extensive contacts with the forum state); *Cent. Wyoming Neurosurgery*, 2013 WL 2457705, at *4 (denying a request for jurisdictional discovery that consisted "of two short paragraphs in [] response to [defendant's] motion offering no greater specificity than '[l]imited jurisdictional discovery would establish whether [defendant] had purposefully availed itself of the privilege of conducting activities within Wyoming'"); *McNeill v. Geostar,* 2007 WL 1577671, at *3 (D. Utah May 29, 2007) (denying jurisdictional discovery where the plaintiff failed to identify what he sought in discovery).

*Conclusion*

Because Magnesium failed to establish Terves' minimum sufficient contacts with Oklahoma, Terves' Motion to Dismiss (Dkt. 15) is **GRANTED**, and this case is **DISMISSED**.

**IT IS SO ORDERED** this 2nd day of November 2022.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE